The next case we will hear this morning is Desline-Meggett v. Commissioner of Social Security. Mr. Wendt, whenever you are ready, we will hear from you. Thank you, and may it please the Court. My name is Rob Wendt from Charleston, South Carolina. I represent Ms. Desline-Meggett. Just for the sake of brevity and with the Court's permission, I would like to refer to her as Ms. Meggett. The central and dispositive issue in this case really should be focused on the failure of the ALJ to adequately articulate his findings at Step 4 of the sequential evaluation, where he was required to find whether or not Ms. Meggett could return to her past relevant work, either as she actually performed it or as it is generally performed in the national economy. What he failed to do, of course, was to resolve a very significant conflict in this record between the DOT description of how that job is generally performed in the national economy, which requires a middle third of the population degree of math ability, and the evidence that was ordered post-hearing by the ALJ, a psychological examination which showed that as a result of her stroke, Ms. Meggett had suffered a loss of math ability to the lowest ninth percentile. It was the ALJ's failure to do this, which is really... I don't want to derail you, but I did wonder about that specific fact. You said a loss of her math ability, and I couldn't find the doctor or the ALJ, I mean the ALJ talking about what the doctors report. I couldn't find that he was able to pin it on that, right? That there, she said, I'm not as quick as I used to be. I can't look at a computer as long. There's definitely some sort of degradation after the stroke, but she also took a test that showed her math skills aren't great, and the doctor said we don't have a previous test to know whether that was a loss of function or just the status quo. That might be a minor point, but I wanted to get your response on that. It's a great question, Judge. First of all, in brain injury cases, it's not unusual for there to be no pre-mortem testing done. In psychology, there are various protocols and tests for estimating that. This is what the doctor did in this particular case. He said that because there was evidence, and of course this was from her, from the interview, that she had suffered, noticed a decline in her academic abilities and that she felt slower, and her husband told her that she felt slower. That's what led him to give this diagnosis. It's a rule-out diagnosis, a provisional, which is very common in mental health, and that is, well, there may be some other reasons that cause it, but I have enough evidence to say this is a probable diagnosis. But I think what's important is that if you look at the form that he completed in which he rated the functional limitations which would affect work, that form says rate the limitations resulting from the impairment. He very unequivocally said she should avoid any jobs that require any more than basic math skills or something to that effect. So he did account for that in his diagnosis, and I think it's also important to look at the fact that the psychologist, Dr. McClain, found that the test scores were valid. And validity is a big issue in psychological testing, and in some tests, there are tests within the test, tests for that, but based on, he is explicit in his report that it was a valid test in his professional opinion. The Social Security Administration has very robust rules regarding articulation or the explanation of a finding by an ALJ at step four of the sequential evaluation. There are two of them that are really important. The first, of course, is in the Social Security ruling SSR 8262, the capacity to do past relevant work. And it's very specific that the explanation, and I'm just quoting from it, the explanation must describe the weight attributed to the pertinent medical and nonmedical factors. And this is critical, reconcile any significant inconsistencies. Reasonable inverses may not be drawn, but presumptions, or may be drawn, but presumptions, speculations, and suppositions must not be used. And there's another one that follows it in Social Security. Give me the, what's the best example you've got of an inconsistency that you think required reconciliation? Well, the job, as the DOT indicates very clearly, requires math skills within the one-third of the population, so 30th to 60th percentile. And she scored out at the lowest ninth percentile. And that was just too low to... That doesn't quite, the way I read her job description, and it was laid out specifically, the only thing that was related to math is taking care of the bank accounts in the clerk's office. And she took care of that. But it was also found that she continued, after her stroke, she continued to take care of the money and the banking at home. And she almost got a little sarcastic when her husband, well, did your husband take over that? No, no, I do that. And so it seemed to me that maybe she was a little slower, but the only math-related thing in their job description, and there was a pretty fulsome job description she gave for her job as clerk. And the only thing that I saw that was really math-related was taking care of balancing the bank accounts, which she did at home also. Well, just a couple of things on that point. I think this record could have used a little more development at the hearing and so on. There's no real evidence that it differed from the way it's described in the Dictionary of Occupational Titles. And this is a court of, it's not just a traffic court. I mean, she's given the description of the actual job. Why would we look at the DOT? Well, first of all, the commissioner can rely on government data, what's considered reliable government data, and the agency does that all the time in these hearings. But her description of the job was not as thorough as the DOT, I would submit. She went on for several lines, and included she receives these, and she does this and files papers and enters things on the computer. And the only thing that I saw there in that list was that she takes care of the bank account, I guess balancing the checking account for the office. And she listed that, and she's also described that same function, actually saying I take care of the money and the banking at home after strokes. And they look sort of comparable. Well, perhaps at first blush. Is there any evidence to suggest otherwise? Well, the evidence, first of all, I think we have to put it into the context of the work that she did. And by the way, she did indicate that she had to file reports. In South Carolina, the support staff for Magistrate's Courts, they're state employees through the State Summary Court Administration, and they have to make reports to the State of South Carolina. So she did indicate she had to prepare reports. And while it's not clear, I think it's reasonable to assume that that did include making financial reports, because those courts are taking I wouldn't assume that at all. It looked like that was sort of a collateral function she had. It was the last listed function. She listed probably, I don't know, a dozen different functions she did as clerk, and she added at the end take care of the bank account. Well, I think the essential point is that this is why this case, one of the reasons that this case should go back for a new hearing, because it's really not been well developed as far as her work at home. There's really no evidence, and there were no questions at the hearing, about what handling her finances at home did. And to put it into context, there's a difference between her Well, I'm assuming, like everybody would assume, that you get bills and you pay bills and you balance a checking account and you send out the checks and alert your husband that we don't have any more money or you do have more money and we need this. In other words, the normal money and banking account decisions in a household. Well, Judge, and that may be true, but also Do you think of anything less than that? Well, with modern technology, a lot of people never balance a checkbook and pay all their bills online. I'm looking at one that doesn't. My 27-year-old daughter, I don't think has ever balanced a checkbook, but she's good with money. But it's just the record is devoid of enough information. But the other issue is this, that the RFC has to be considered in the context of the ability to do the work on a regular and continuing basis, eight hours a day, five days a week. And as acknowledged by the ALJ and testified at the hearing, this is a very high-paced environment with a lot going on. That's a far different matter from being at home and whatever the level of finance Can you give me another? Are there any other examples where you think the ALJ failed to reconcile inconsistencies? I understand your argument that DOT gives a description that's different from her description, and that maybe is different from her math scores. But bracket that one for a minute. Is there any other inconsistency that you think the ALJ was required to and failed to reconcile? Well, I think that that's the essential one. There was a minor one that really wasn't covered in the briefs, and that has to do with the ability to return to work as actually performed because her statements that the forms that she completed about how she performed that work clearly stated that she was on her feet for five hours out of an eight-hour day, and that's commensurate with light exertional work, whereas the ALJ found she was limited to sedentary. So that was another inconsistency. But I think in the end, the inconsistency with regard to this math testing was really more important. And it's also, I think, important to realize that the ALJ, under the Commissioner's regulations on 8262, Social Security Ruling 8262, imposed on the ALJ, even though the claimant has the burden of proving disability, the ALJ is tasked with not only resolving conflicts, but also developing all evidence necessary at this particular level. I'm out of time. Thank you. Thank you. We'll hear from Mr. Adams. Ms. Adams. May it please the Court. I'm Erica Adams. I'm a Special Assistant United States Attorney, and I'm arguing for the appellee, the Acting Commissioner of Social Security. Appellant fortunately recovered well from her two mild strokes. The ALJ knew this because her treating stroke experts said so. After comprehensive neurologic and mental status examinations post-stroke, her treating stroke experts arrived at two important conclusions that guide this case. First, her strokes fell at the very lowest end of mild in severity. That was assessed repeatedly on the National Institute of Health's Treating Stroke Scale. She repeatedly received scores of 1 out of 42. In other words, her strokes were at the lowest possible end of mild. Second, her strokes resulted in minimal functional impact. This was repeatedly assessed by her treating stroke experts' use of the Modified Rankin Scale. That is a scale that assesses functional outcome post-strokes. And on no less than five occasions, her treating stroke experts repeatedly assigned her Modified Rankin Scores of 1, indicating that she had no significant disability and that despite her symptoms, she was still able to perform her usual duties and activities. Now, as the ALJ stated in this case, the weight of the evidence supported his findings. He not only had her treating stroke experts listening to her allegations, performing comprehensive examinations, and then arriving at conclusions that she was able to perform her usual duties and activities. The ALJ also had the opinions of four state agency physicians that supported his finding for a sedentary RFC. And then as well, my colleague on the other side has mentioned that the record wasn't developed or the ALJ didn't do enough here. But listening to her allegations, in this case, the ALJ took the additional step of after the hearing to send the appellant to two post-hearing CEs based on her testimony that she could not return to her past relevant work because of her vision and also for problems multitasking. So he sent her to a visual consultative examination as well as a mental consultative examination. Both of the results of that came back generally benign. In the ALJ's words at page 28 of the record, those consultative examinations came back with only marginal findings of no opinions of significant limitations. So in addition, the ALJ solicited the input of a vocational expert to arrive at his finding that she could return to her past relevant work. So this certainly, as the ALJ stated, the weight of the evidence, that's more than a mere scintilla  And then just briefly turning to this math score. So my opponent, my colleague on the other side has brought at issue her ability to perform mathematics. This was taken, this was a very narrow finding from within Dr. McLean's report. The argument overlooks, isolates in on a narrow sentence in the report, overlooking that the report as a whole supports the ALJ's conclusion. The ALJ discussed Dr. McLean's math finding at page 27. He didn't include it in the RFC, nor was he required to because it didn't align with the rest of the evidence in the record. As your honors have already mentioned, when in her hearing testimony, the appellant did not mention mathematics as a reason for her inability to perform her past relevant work. In fact, the only reference to mathematics at the hearing was for her to say that she was the head of her household finances. And when asked by the ALJ if she had any difficulty doing so, she said no. This, throughout the record, her examination showed intact mental functioning. There was no evidence of a reduction from her prior mathematic ability. And this evidence all aligns with her treating stroke experts who are repeatedly looking at her neurologic and mental status post-strokes and arriving at the conclusion that despite her symptoms, she's able to perform all of her usual duties and activities. All of this evidence supports the ALJ's steps finding at step four, which she solicited the assistance of a vocational expert on the issue. And with regard to the commissioner's burden at step four, so we are required to show that she can perform her past relevant work either as actually or generally performed. The tests are disjunctive. So we win if we establish that burden with regard to either. And here, as your honors have mentioned, we have detailed reports about her descriptions of her past relevant work. And to the extent that she mentioned mathematic at all in those descriptions, such as completing, making bank deposits, and reconciling bank statements, these were the same types of things that she did as her head of household. Can we do that? So your colleague on the other side, maybe he doesn't say it. I'll say it rather than put in his words. He says that might be true based on her description of her job. But we need to put her description of her own job aside and look at the DOT's description of her job. And the DOT's description of her job suggests that more math is required than what she reported about her own job. Do you agree with that? Do we have to look at DOT even though we have her own description of her job? No, your honor. So the DOT description would be akin to the job as actually performed in the national economy. Here, the commissioner's position is that we focused on as she actually performed the job. So that would look at the particular description of her job as she performed it in the past. And so your view is the DOT description, about the 30 percentile or whatever, middle third math, that's just irrelevant because what we've got is her own description and it's just bank accounts and her own evidence supports. Correct, your honor. We didn't need to get into that argument because we have her own description of how she actually performed the work, which is more than supported by substantial evidence in this case. So as I stated, the ALJ in this case indicated that the weight of the evidence, her treating stroke experts, two consultative examinations, as well as four state agency physicians all supported the ALJ's finding in this case. So if there's no further questions. All right. Thank you. Thank you. Mr. Wendt. First of all, Ms. Meggett was never asked at the hearing specifically about math abilities. And it really wasn't on anyone's radar screen at the time because this report, this psychological report hadn't been done. And of course there was not a supplemental hearing and so on. So really the record is deficient here in this. And it frustrates me. Understanding that argument, I asked you earlier what were the inconsistencies. You also made the argument in your brief that there was a failure to build a logical bridge. Can you tell me what is the river? What is it that you think needed to be connected? What are the two sides that you think the ALJ, in the opinion we have here, failed to connect? Well, first of all. We don't build bridges if there's no river, right? So I'm just trying to figure out what was the problem that you think needed connecting tissue? Sure. The judge didn't make sufficient explicit findings about a function by, didn't explain what she did, particularly at the job, in terms of math abilities. That just was not explored. I'm sorry, there's a she in that sentence that I'm not sure who it is. Is that your client or the ALJ that failed to describe? Well, she was not asked these questions. She said, she gave an answer, right? She said, I deal with the bank account. At home, she said she answered that. And at her job. And she mentioned that she dealt with the bank account, but she wasn't, that should have been an inquiry, and if I think it had been on everyone's radar screens, there would have been more questions about that. Okay, so that's really just like a failure to develop the record argument, but that's not fair to build a bridge. Well, you can't build a bridge if you don't have enough facts. That's totally fair. Are there any other bridges that you think needed to be built, or was it really, this is just about the math ability, or the math ability to manage her job? At this point, given the record as it is, if it's remanded, this record... Yeah, I get that. I just want to make sure, really, I'm just trying to make sure I understand all of your arguments, is what I'm trying to get at, right? Yes, Your Honor. And I would also like to mention this. First of all, there was no evidence that Ms. Megan was ever tested for math in all of this treatment. These scales, the Modified Rankin Scale, the NIH Stroke Scale, if you look at those, and there's citations to information about this, they're very broad-brush scales that really deal with physical problems. They don't get into these nuanced issues, and certainly not the math issue. She also said at the hearing, Ms. Maggots testified at the hearing that she had never been formally tested during all of her treatment for her math abilities, or had cognitive testing, that is, which would have included math. So this post-hearing evidence was the first time this was ever explored. The V.E. never testified about it. Just to make sure I'm remembering correctly, this post-hearing evidence, the ALJ said he sent it to claimant's counsel, and there was no response, right? That is correct. It should have been responded to, but that doesn't absolve the ALJ's duty, particularly under Social Security Ruling 8262, to fully develop the record. And he did have the authority to call a supplemental hearing himself, and I can provide you with that citation. The 20 CFR 404.944, and also the internal operating guidelines for the hearing office, that's the HALEX, H-A-L-L-E-X, all caps, capital I-2-6-80. So he had the authority to do all those things. Thank you. I think we're at the red light stage. Thank you, Mr. Wendt. We'll come down and greet counsel and proceed on to the final case.
judges: Paul V. Niemeyer, Julius N. Richardson, Allison J. Rushing